IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DEEPAK JAIN, MEHUL DESAI, and JAIN-DESAI, LLC, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | C.A. No.: 1:21-cv-00162-LPS |
| | : | |
| FINABLR VENTURES HOLDINGS, LTD. and UAE EXCHANGE INTERNATIONAL HOLDINGS, LTD., | : | **JURY TRIAL DEMANDED** |
| | : | |
| | : | **REDACTED** |
| | : | **PUBLIC VERSION** |
| Defendants. | : | |

## COMPLAINT

Plaintiffs Deepak Jain, Mehul Desai, and Jain-Desai, LLC (collectively, "Plaintiffs"), by and through their undersigned counsel, for their Complaint against Defendants Finablr Ventures Holdings, Ltd. and UAE Exchange International Holdings, Ltd. (collectively, "Defendants"), allege as follows:

## NATURE OF THE ACTION

1.      Despite having twice agreed to acquire Plaintiffs' interests in Swych, Inc. ("Swych"), Defendants now refuse to pay any compensation to Plaintiffs while having benefited from unfettered use of Swych's resources at no cost.

2.      As set forth below, Plaintiffs are founders and now minority shareholders of Swych, a technology company that built a mobile platform through which customers can purchase and send gift cards.  Swych initially obtained strategic investments from Defendants, which it used to grow and expand Swych's operations.  As Swych became successful, Defendants recognized the value of Swych's technological achievements and sought to acquire a controlling interest in it,

which they ultimately did through a September 2018 Agreement and Plan of Merger and a November 2018 Series B Preferred Stock Purchase Agreement. Plaintiffs only agreed to relinquish control, which Defendants obtained through a combination of acquiring existing shares and the issuance of new shares, after Defendants agreed to contemporaneously execute a separate 2018 Stockholders Agreement, which provided for a put option requiring Defendants to acquire one-third of Plaintiffs' minority interests in Swych ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓.

3.     Following the 2018 Stockholders Agreement, Defendants had full control of Swych, but this was not enough. Instead, Defendants wanted to wholly dismantle Swych and use its employees and resources to support their own operations. To do so, Defendants agreed to acquire all of the minority interests in Swych ▓▓▓▓▓▓▓▓▓▓▓ After negotiating, agreeing to, and executing a 2019 written Stock Purchase Agreement (the "SPA"), Defendants continually delayed and sought additional time to complete the acquisition. All the while, Defendants appropriated Swych's employees and resources for their own benefit, using their authority as controlling shareholders to force Swych to cease devoting any time or resources to its existing gift card business.

4.     Defendants now refuse to honor either of their contractual obligations to purchase Plaintiffs' minority interests in Swych. Instead, Defendants have used Swych's employees and resources for their own benefit, at the expense of Plaintiffs and their now almost valueless interests in Swych. Plaintiffs therefore bring this suit for breaches of contract and promissory estoppel to recover actual and consequential damages for Defendants' failure to purchase all of Plaintiffs' minority interests in Swych and, in the alternative, Defendants failure to acquire one-third of their minority interests pursuant to the Stockholders Agreement.

2

**THE PARTIES**

5.      Plaintiff Deepak Jain ("Jain") is a natural person and citizen of Texas.  Plaintiff Jain may be contacted through his attorneys of record.

6.      Plaintiff Mehul Desai ("Desai") is a natural person and citizen of Illinois.  Plaintiff Desai may be contacted through his attorneys of record.

7.      Plaintiff Jain-Desai, LLC ("Jain-Desai") is a Delaware limited liability company, whose members include Plaintiffs Jain and Desai.  Plaintiff Jain-Desai may be contacted through its attorneys of record.

8.      Defendant Finablr Ventures Holdings, Ltd. ("Finablr Ventures") is a corporation organized in the Abu Dhabi Global Market, Abu Dhabi, United Arab Emirates, with its principal place of business at 7th Floor, Tamouh Tower, Building # 12, Marina Square, Al Reem Island, Abu Dhabi, United Arab Emirates.

9.      Defendant UAE Exchange International Holdings, Ltd. ("UAE Exchange") is a corporation organized in England and Wales with its principal place of business at 7th Floor, Tamouh Tower, Building # 12, Marina Square, Al Reem Island, Abu Dhabi, United Arab Emirates.

**JURISDICTION AND VENUE**

10.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2). Specifically, this case involves an amount in controversy that exceeds $75,000, exclusive of interest and costs, and is between Plaintiffs, who are citizens of states, and Defendants, which are citizens of foreign states.

11.     This Court has personal jurisdiction over Defendants because Defendants have transacted business, committed tortious acts, and caused tortious injury in this state under 6 Del. C. § 3104(c)(1)–(4).  Personal jurisdiction over Defendants is also proper under 6 Del. C. § 2708

pursuant to the consent of Defendants under § ███████████████████ and of Finablr

Ventures under § ████████████████████████, and as a result of the

2018 agreement providing that Finablr Ventures had the ████████████████

████████████████████. Defendants have intentionally availed themselves of

the privilege of conducting business in this state and district, have purposefully directed activity

at this state and district, and have established sufficient minimum contacts with this state and

district such that Defendants can reasonably and fairly anticipate being hailed into this Court.

Specifically, Defendants' conduct has harmed Plaintiffs, including Jain-Desai, a Delaware citizen,

with respect to their ownership interests in Swych, a Delaware corporation.  Furthermore,

Defendants' conduct relates to its use of its Delaware incorporated affiliates, to contracts with

Delaware entities, including with Swych and Jain-Desai under the September 2018 Agreement and

Plan of Merger, November 2018 Series B Preferred Stock Purchase Agreement, Stockholders

Agreement, and SPA, and to contracts with United States individuals with respect to those entities,

including with Jain and Desai under the Stockholders Agreement and SPA.  These contracts, and

the transactions and relationships thereunder, form the basis of Plaintiffs' allegations in this

Complaint.

12.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a

substantial part of the events giving rise to Plaintiffs' claims occurred in Delaware and a substantial

part of the property that is subject to this action is situated in Delaware.  Furthermore, under 28

U.S.C. § 1391(b)(3), at least one Defendant is subject to personal jurisdiction in this district.

Venue is also proper under 6 Del. C. § 2708 pursuant to the consent of Defendants under § 7.12

of the Stockholders Agreement.

## **BACKGROUND**

13.     Plaintiffs are shareholders who own at least a combined ███████ in Swych,[1] a Delaware corporation with its principal place of business in Dallas, Texas.  Swych is a technology company founded by Plaintiffs Jain and Desai in 2015 that provides a mobile platform through which customers can purchase and send gift cards.  Jain is Swych's chief executive officer and a member of the board of directors, and Desai is a founding investor and member of Swych's board of directors.

14.     After successfully building an operable digital gift card platform, Swych sought to develop its operations and consumer base with the help of strategic investments.  In August 2017, Swych issued a series of shares to new investors, including UAE Exchange.  UAE Exchange is part of a larger group of companies (the "Finablr Group") established by Bavaguthu Raghuram Shetty.  The Finablr Group provides a wide range of financial services, with a focus on retail outlets that consumers can use to exchange funds and transfer funds internationally.  Swych's digital gift card business fit squarely within the Finablr Group's business operations.

15.     After these initial strategic investments, Swych continued to expand its gift card business.  Recognizing this success, the Finablr Group acquired a controlling interest in Swych pursuant to a September 2018 Agreement and Plan of Merger that provided for a combination of UAE Exchange purchasing the interests of the other strategic investors as well as Swych issuing an additional series of shares to Finablr Ventures, another member of the Finablr Group, pursuant to a November 2018 Series B Preferred Stock Purchase Agreement.  This Agreement and Plan of

---

[1]     These interests include ███ of Swych held by Desai as vested, but not yet exercised, options.  Depending on whether other former employees are still entitled to exercise options granted to them during their employment, Plaintiffs' actual ownership might be significantly greater than ███.

Merger and Series B Preferred Stock Purchase Agreement were consummated on November 7, 2018, at which time UAE Exchange and Finablr Ventures acquired a combined ███ controlling interest in Swych.

16.     To define the rights within Swych's new ownership structure, UAE Exchange, Finablr Ventures, Jain, Desai, and Jain-Desai concurrently executed the Stockholders Agreement. In exchange for giving controlling interest of Swych to UAE Exchange and Finablr Ventures, the Stockholders Agreement gave Jain and Desai a put option that required UAE Exchange to purchase one-third of Jain and Desai's interests in Swych (including those interests held by Jain-Desai that were contributed to it by Jain and Desai), upon written demand after 15 months, at a valuation of at least ██████.

17.     Unbeknownst to Plaintiffs, controlling Swych was only part of the Finablr Group's larger plan. At the time, the Finablr Group was planning to make an initial public offering on the London Stock Exchange. To facilitate this public offering, UAE Exchange assigned its interests in Swych to Finablr Ventures, in order for a single entity to own all of the Finablr Group's Swych interests. Following that assignment, Finablr PLC underwent a successful public offering and was listed on the London Stock Exchange.

18.     Now that it was a public company, the Finablr Group had a larger interest than actually operating Swych's gift card business. It wanted to completely repurpose all of Swych's resources to form a new technology division within the Finablr Group that would support its other payments and financial services. In fact, the Finablr Group publicly referred to Swych's operations in Texas as its North American Innovation Hub. The Finablr Group sought to establish a new subsidiary, Finablr Technologies, to be organized in Delaware. Finablr Technologies would focus

on modernizing and digitizing the Finablr Group's operations, and Swych's preexisting staff and resources would be fundamental to these efforts.

19.     However, Swych already had a growing and successful gift card business. The Finablr Group knew that they could not justify to Swych's minority shareholders a decision to completely refocus these operations in favor of merely supporting other Finablr Group entities, especially the proposed Finablr Technologies. Accordingly, the Finablr Group needed Finablr Ventures to fully acquire Swych and purchase the remaining minority interests, including those of Plaintiffs.

20.     The parties began discussions in March 2019 about this possible acquisition and continued negotiations over the next several months. By September 2019, the parties agreed that Finablr Ventures would purchase the minority interests in Swych for ███████████. In September 2019, the parties finalized a Stock Purchase Agreement (the "SPA") manifesting the terms of their agreed purchase of Plaintiffs' minority interests, and the parties confirmed their agreement to these terms by executing signature pages that they sent to Finablr Ventures' United States counsel, Polsinelli PC.

21.     With this binding agreement in place, Finablr Ventures quickly commenced using Swych's employees and resources to develop the Finablr Group's technological operations. Swych's executive team started leading a Payment Technology Solutions business unit within the Finablr Group and prioritizing Finablr Group customers, including Samsung and Google, over Swych's gift card business.[2] Swych employees worked closely with Finablr Ventures' affiliates

---

[2]     In the months following execution of the SPA, Jain continued to work for Swych, but Finablr Ventures prevented Swych from paying Jain's compensation, to which he is entitled as set forth in a separate, written Executive Employment Agreement. Because claims under the Executive Employment Agreement are subject to a mandatory venue selection provision (which

in the Finablr Group, including Xpress Money Services, Inc., a Delaware corporation, to assist their sales operations.  Swych also reorganized its engineering team to work on projects for the Finablr Group, which it used to expand its payment operations.  In fact, the Finablr Group paid Swych's employees' salaries, including through its Delaware incorporated subsidiaries Moneydart Holdings, Inc., Moneydart Global Services, Inc., and Moneydart Services, Inc.  The Finablr Group further instructed Swych to reduce its consumer operations and transition Swych's existing customers to comparable services offered by the Finablr Group.  Plaintiffs only allowed Swych and its employees to do so on the explicit instructions of Finablr Ventures and in reliance on representations made by Finablr Ventures that it had agreed to and would soon acquire all of the minority interests in Swych.

22.     In addition to the mutual execution of the SPA, it was clear from the parties' course of conduct that both Plaintiffs and Finablr Ventures had reached a binding agreement as to the acquisition of Plaintiffs' minority interests in Swych.  Consistent with this understanding, the Finablr Group also offered Jain a new role as Global Head of Payments at Finablr Technologies to replace his chief executive officer position at Swych, which would become obsolete following Swych's imminent acquisition.

23.     Despite its agreement to purchase the minority interests in Swych, and despite its conduct in transferring employees and assets to other Finablr Group activities, Finablr Ventures began to systematically delay the completion of that purchase and obfuscate its reasons for delay. The parties initially intended to complete the acquisition by October 15, 2019.  But as that date

---

requires such actions to be filed in Dallas County, Texas or the Northern District of Texas), Jain's claims under the Executive Employment Agreement are not included in this Complaint.  Jain reserves his right to pursue such claims in Dallas County, Texas or the Northern District of Texas, in accordance with the terms of that Executive Employment Agreement.

neared, Finablr Ventures informed Plaintiffs that its auditors had determined that Desai was a "related-party" under United Kingdom securities laws,[3] which required Finablr Ventures and the Finablr Group to take certain unspecified remedial steps.  However, they assured Plaintiffs of the completion of the acquisition by November 14, 2019.  Soon after, however, Finablr Ventures claimed further delays in completing the undefined corrective measures regarding alleged related-party issues.  While Finablr Ventures predicted that it only needed two to four more weeks, in December 2019, it again delayed, claiming that it could complete the acquisition after a Finablr Ventures and Finablr Group board meeting the following month.

24.     However, that meeting provided no such resolution.  Instead, Finablr Ventures then attempted to renegotiate the terms of its agreement with Plaintiffs.  While Finablr Ventures had a continuing obligation to purchase the minority interests in Swych, it requested that Plaintiffs accept a line of credit in lieu of a cash payment.  Finablr Ventures claimed that this would somehow alleviate the related-party concerns with respect to Desai and that Jain was now also a related-party who needed to accept a line of credit.  In reality, this request appears to have been a calculated effort to maintain the appearance of Finablr Ventures' intent to comply with its binding obligations while balancing the severe liquidity issues faced by the Finablr Group.  At the time, the Finablr Group had over $1.3 billion in debt, much of which it had been hiding from disclosure, despite its reporting obligations as a publicly held corporation.  The Finablr Group had been near insolvency for much of its existence as a public corporation, and the London Stock Exchange has since halted trading of its shares.

25.     While Plaintiffs were willing to accept some compensation as a line of credit, they were under no obligation to do so, and they were not willing to completely replace all of their cash

---

[3]     At the time, Desai was also the Chief Technology Officer of Finablr Limited.

consideration with this alternative line of credit.  This was especially true because, by that time, Finablr Ventures' usurpation of Swych's employees and resources had resulted in a precipitous decline in Swych's operations and revenue.  Despite Plaintiffs' efforts to accommodate Finablr Ventures' request to modify the already binding terms of the SPA, Finablr Ventures was unwilling to accept anything other than complete agreement to its proposed amendment.

26.     By March 6, 2020, Finablr Ventures had still failed to purchase any of the minority interests, and Plaintiffs demanded that Finablr Ventures fulfill its obligation to complete the acquisition of Swych by the end of that month.  At that point, Jain and Desai's 15-month put options under the Stockholders Agreement had also vested.  Acquiring all of Plaintiffs' interests in Swych would have mooted Plaintiffs' rights under that put option, and the SPA defines the treatment of any vested and unvested options held by the minority interest owners.  Nevertheless, given Finablr Ventures' demonstrable unwillingness to comply with its contractual obligations, and without waiver of their rights under the SPA, Jain and Desai also made a written demand on March 10, 2020 that UAE Exchange and Finablr Ventures purchase one-third of Plaintiffs' ███ interest in Swych[4] pursuant to the put option in the Stockholders Agreement.   Finablr Ventures responded to Plaintiffs' March 6, 2020 demand by confirming the Finablr Group's liquidity issues, refusing to complete the acquisition of Plaintiffs' minority interests in Swych, and questioning its ability to perform under the put option.

---

[4]     The put option in the Stockholders Agreement applies to "Jain Securities" and "Desai Securities," which are defined as the interests in Swych held by Jain and Desai, respectively, and the interests held by Jain-Desai that were contributed to it by Jain and Desai, respectively.  Because all of the Swych interests held by Jain-Desai were contributed to it by Jain and Desai, all of those interests are subject to the put option in the Stockholders Agreement, and Jain and Desai exercised their put option with respect to the entire ███ interest in Swych held by Plaintiffs.  As previously noted, Plaintiffs' actual ownership interest may be significantly higher depending on the option rights of former employees.

27.     Since then, UAE Exchange and Finablr Ventures have not purchased any of Plaintiffs' interests in Swych, under either their obligation to wholly acquire Swych or the put option in the Stockholders Agreement.   With Swych's resources and employees focused on assisting the Finablr Group, Swych diverted its operations away from its successful gift card business and abandoned key aspects of its expansion plans, including a lucrative security token offering.  When coupled with the economic downturn caused by the COVID-19 pandemic, Swych now generates negligible revenue and was forced to terminate or furlough almost all of its employees.  Meanwhile, Finablr Ventures and UAE Exchange benefited from taking complete advantage of Swych's employees and resources, for which they have paid no compensation despite their binding obligations to do so.

## COUNT I
## BREACH OF CONTRACT FOR FAILURE TO ACQUIRE SWYCH

28.     As the factual basis for their allegations, Plaintiffs repeat and reallege the allegations of the prior paragraphs of their Complaint as if set forth fully herein.

29.     Plaintiffs and Finablr Ventures entered into a binding agreement that Finablr Ventures would acquire the minority interests in Swych for ▇▇▇▇▇▇▇.   The parties manifested the terms of their agreement in the signed and executed SPA.  In addition, following execution of the SPA, Finablr Ventures began asserting direct control over Swych's resources and employees consistent with the parties' agreement for Finablr Ventures to wholly acquire Swych and its operations for the benefit of the Finablr Group.  Such conduct both confirms and ratifies Finablr Ventures' agreement to acquire the minority interests pursuant to the terms of the SPA.

30.     Finablr Ventures has materially breached its contractual obligations by failing to acquire any of Plaintiffs' minority interests in Swych.

11

31.     As a direct, proximate, and foreseeable consequence of Finablr Ventures' conduct, Plaintiffs have suffered actual and consequential damages, including amounts withheld by Finablr Ventures for failing to purchase Plaintiffs' minority interests in Swych.

**COUNT II**
**BREACH OF CONTRACT FOR VIOLATING THE PUT OPTION**

32.     As the factual basis for their allegations, Plaintiffs repeat and reallege the allegations of the prior paragraphs of their Complaint as if set forth fully herein.

33.     As described above, Plaintiffs and UAE Exchange entered into the Stockholder Agreement.  This gave Jain and Desai a valid and enforceable put option that, upon their written demand after 15 months, required UAE Exchange to purchase one-third of Plaintiffs' interest in Swych at a minimum valuation of ████████, entitling Plaintiffs to a payment of at least approximately ████████, representing one-third of Plaintiffs' ████ ownership interest (the minimum ownership interest held by Plaintiffs; that ownership interest may be significantly higher, and Plaintiffs in this cause of action seek recovery of one-third of their ownership interest as established at the time of trial).  As an assignee and purchaser of UAE Exchange's interests in Swych, Finablr Ventures is also liable to honor this obligation, pursuant to sections 5.02 and 7.06 of the Stockholders Agreement.

34.     Jain and Desai timely tendered the necessary written demand following the elapse of 15 months and receipt of a valuation of Swych.

35.     Defendants have materially breached their obligations by failing to purchase the required one-third of Plaintiffs' shares of Swych upon receipt of Jain and Desai's written demand.

36.     As a direct, proximate, and foreseeable consequence of Defendants' conduct, Plaintiffs have suffered actual and consequential damages, including amounts withheld under the

Stockholders Agreement for the purchase of one-third of Plaintiffs' ███ interest in Swych at a valuation of ██████.

## COUNT III
### PROMISSORY ESTOPPEL

37.   As the factual basis for its allegations, Plaintiffs repeat and reallege the allegations of the prior paragraphs of their Complaint as if set forth fully herein.

38.   As described above, Finablr Ventures made repeated representations and promises to Plaintiffs that they would imminently purchase Plaintiffs' minority interests in Swych.

39.   Finablr Ventures reasonably expected that Plaintiffs would rely on those representations.  Finablr Ventures made those representations because it needed Plaintiffs to allow Finablr Ventures to use Swych's employees and resources to benefit itself and the Finablr Group, rather than Swych's already successful gift card operations.  Finablr Ventures' expectations were reasonable given the history of trust and successful dealing between Plaintiffs and members of the Finablr Group.  Furthermore, Finablr Ventures' requested use of Swych's employees and resources was consistent with Finablr Ventures' representations and promises that it would imminently wholly acquire Swych's operations for such use.

40.   Plaintiffs reasonably relied on Finablr Ventures' repeated representations and promises to their detriment by allowing Finablr Ventures to use Swych's employees and resources to benefit itself and the Finablr Group, rather than Swych's own operations and shareholders. Plaintiffs would not have allowed Swych's resources and employees to focus on assisting Finablr Ventures and the Finablr Group other than in reliance on representations of imminent compensation or acquisition.  Such reliance was reasonable given the history of trust and successful dealing between Plaintiffs and members of the Finablr Group.  Furthermore, Finablr Ventures' requested use of Swych's employees and resources was consistent with Finablr

Ventures' representations and promises that it would imminently wholly acquire Swych's operations for such use.  This reliance was to Plaintiffs' detriment due to the harm caused to Swych's operations and the resulting diminution in value of Plaintiffs' interests in Swych.

41.     Justice can only be avoided by enforcement of Finablr Ventures' representations and promises to prevent it from inequitably gaining from its use of Swych's resources at the expense of Swych's shareholders, including Plaintiffs, who received no compensation in return.

42.     As a direct, proximate, and foreseeable consequence of Finablr Ventures' conduct, Plaintiffs have suffered actual and consequential damages, including payments withheld for the promised purchase of Plaintiffs' minority interests in Swych and the diminution in value of Plaintiffs' minority interests in Swych due to Finablr Ventures' misappropriation of Swych's resources and employees.

## JURY DEMAND

43.     Plaintiffs demand a trial by jury on all claims and issues so triable.

## CONCLUSION AND PRAYER FOR RELIEF

44.     Based on the foregoing allegations, Plaintiffs Deepak Jain, Mehul Desai, and Jain-Desai, LLC pray that the Court enter judgment in their favor on their claims against Defendants Finablr Ventures Holdings, Ltd. and UAE Exchange International Holdings, Ltd. and award Plaintiffs the following remedies:

> a.     Actual damages for breach of contract;
>
> b.     Actual damages for promissory estoppel;
>
> c.     Consequential damages, including benefit of the bargain damages, out of pocket damages, and lost profits;
>
> d.     Exemplary damages;

e.      Pre-judgment and post-judgment interest as permitted by law;

f.      Costs; and

g.      Any other legal or equitable relief that Plaintiffs may be entitled to recover.

HEYMAN ENERIO
GATTUSO & HIRZEL LLP


*/s/ Samuel T. Hirzel, II*
Samuel T. Hirzel, II (# 4415)
(shirzel@hegh.law)
Aaron M. Nelson (# 5941)
(anelson@hegh.law)
300 Delaware Ave., Suite 200
Wilmington, DE 19801
(302) 472-7300
*Attorneys for Plaintiffs Deepak Jain and Mehul Desai*

**CO-COUNSEL:**

LYNN PINKER HURST
& SCHWEGMANN, LLP

Eric Pinker (*pro hac vice forthcoming*)
(epinker@lynnllp.com)
Leo Park (*pro hac vice forthcoming*)
(lpark@lynnllp.com)
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
(214)-981-3800 Telephone
(214)-981-3839 Facsimile

Dated:  February 8, 2021